UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 13-** |
| | : | |
| v. | : | |
| | : | |
| **CHERYL E. MORRISON,** | : | |
| | : | 18 U.S.C. § 371 (Conspiracy) |
| **Defendant.** | : | 18 U.S.C. §1341 (Mail Fraud). |

# INFORMATION

The United States Attorney informs the Court:

## COUNT ONE

## CONSPIRACY

### Introduction

At all times material to this Information:

1. The defendant CHERYL E. MORRISON was the owner of CEM Title, Inc., which provided real estate property settlement services to a Washington, D.C. metropolitan area title and escrow company for a fee. Defendant MORRISON served as a closing processor for residential real estate settlements and was a commissioned Notary in the Commonwealth of Virginia.

2. As part of her job at CEM Title, Inc., the defendant CHERYL E. MORRISON did the following, among others: she prepared closing documents, including a "Settlement Statement" (commonly referred to as a "HUD-1") and she was aware that mortgage lenders reviewed and approved the Settlement Statement before funding the loan; she acted as a "notary public" witnessing the signatures of buyers and sellers; she prepared and reconciled disbursement statements by collecting the buyers' cash contributions and disbursing the lenders' money; and,

for properties located in the District of Columbia, she was aware that another person in the office would send the Deed, Deed of Trust, and other documents to the District of Columbia's Recorder of Deeds for recordation in the official file, and then would forward the recorded documents (or copies) to the lenders.

3. Mortgage lenders issued instructions on how real estate property settlements were to be conducted for loans which they fund. Those who prepared documents and disbursements for property settlements were to carry out the instructions to protect the lenders' interest in preserving the collateral, and to ensure that the lenders' security interest is appropriately recorded in the public records.

4. Lenders of mortgage loans typically did not lend money for the full purchase price of the property; rather, lenders normally made loans for less, and required that the buyer use some of his or her own funds for the purchase of the property. This gave the lenders assurance that the buyer, with some of his or her own money invested in the property, had an incentive to remain current on his or her mortgage payments to avert foreclosure, and that the lender would be able to recover the full proceeds of the loan in the event of foreclosure. The cash contribution of the buyer was a material element in the mortgage lenders' decision to fund the mortgage loan.

5. If a mortgage loan were approved, a lender would instruct a settlement company to prepare for a "settlement," that is, a meeting typically at the settlement company's office, when the buyer would hand over their cash contribution and would sign various loan documents, including affidavits and deeds of trust. On many of these legal documents, the buyer's signature would be witnessed by a licensed notary public.

6. After the settlement company received the loan funds from the mortgage lender and the buyer's cash contribution, the settlement company would then pay the costs of the settlement,

debts of the property or seller, and any other authorized expenses as set forth on the Settlement Statement.

7. After settlement, the settlement company would submit the Deed and Deed of Trust or other security instruments for filing with the District of Columbia's Recorder of Deeds (if the property were in the District of Columbia), with instructions that the Recorder of Deeds officially record the documents in the public records and then return to the title company the stamped recorded documents as proof that the documents were filed as required by the lender. The D.C. Recorder of Deeds would mail back the recorded documents to the settlement company for further forwarding to the mortgage lender through the U.S. Postal Service mail service.

8. Countrywide Bank, Resource Bank, and MetLife Bank were financial institutions in that their deposits were insured by the Federal Deposit Insurance Corporation.

9. Federal Housing Administration ("FHA") was a part of the United States Department of Housing and Urban Development. FHA provided government insurance to qualified mortgage loans obtained by individuals from private mortgage lenders and banks.

### The Conspiracy

10. From in or before 2005, and continuing thereafter through at least 2010, in the District of Columbia and elsewhere, the defendant CHERYL E. MORRISON did unlawfully, willfully, and knowingly conspire, combine, confederate, and agree with other persons both known and unknown to the United States to commit offenses against the United States, that is: mail fraud, which affected financial institutions, accomplished by their engaging in a scheme to defraud and to obtain money and property from mortgage lenders, including financial institutions, by means of materially false and fraudulent pretenses, representations, and promises and for the purpose of executing, and attempting to execute the scheme to defraud, willfully causing to be

deposited mail matter to be delivered by the Postal Service or private and commercial interstate carrier, in violation of 18 U.S.C. § 1341.

## Goal of the Conspiracy

11. It was a goal of the conspiracy that defendant CHERYL E. MORRISON and her co-conspirators would defraud mortgage lenders of money by obtaining mortgage loans on properties through untruthful loan applications, falsely notarized affidavits, and fraudulent settlements, with such sales generating large cash proceeds and ownership in real property, and ultimately causing a loss to the mortgage lenders when mortgages were not paid.

## Manner and Means

12. It was part of the conspiracy that defendant CHERYL E. MORRISON assisted a person identified here as Person A with settlements of residential real estate. Throughout the years, Person A brought defendant MORRISON settlement work, which she handled in a materially different manner than normal settlements, including:

1) On legal documents such as affidavits, indemnity agreements, Deeds, Deeds of Trust, and powers of attorney, defendant MORRISON affixed her notary seal, signed, and certified that she witnessed buyers sign their names to the documents when she did not witness the buyers sign the documents as she had certified;

2) Although lenders required that the buyers contribute money toward the purchase of the home, defendant MORRISON did not collect money from these buyers. Instead, she received a photocopy of a check, which she placed in the file to make it appear as if the buyer provided a check;

3) Defendant MORRISON was aware that the Settlement Statement, approved by the mortgage lender, required that the buyer make a cash contribution. In order to

reconcile the Settlement Statement with the funds actually received and distributed, defendant MORRISON altered the disbursement statement to cover for the lack of money from the buyer;

4) Rather than disbursing money to the seller of the property (or borrower, if the transaction was a refinance), as directed by the Settlement Statement, defendant MORRISON prepared the disbursement statement showing that the funds were sent to Person A's company;

5) Defendant MORRISON provided unsigned settlement documents to Person B who returned the documents completed with signatures purporting to be from the buyers; she also arranged for Person B to be paid from each of these settlements;

6) Defendant MORRISON collected at least $42,685 in fees for CEM Title Inc.'s part of processing the real estate settlement and handled about 50 real estate settlements for purchases and refinances for Person A from 2005 to 2010.

### Overt Acts

13. In furtherance of the conspiracy and to effect the object thereof, defendant CHERYL E. MORRISON and other members of the conspiracy committed the following overt acts, among others, in the District of Columbia and elsewhere:

### 222 Seaton Place, NE, Washington, D.C.

14. On or about January 9, 2008, in the District of Columbia and elsewhere, RS purchased 222 Seaton Place, NE, Washington, D.C. for $524,000 at the request of Person A. The loan application falsely stated that RS worked for Person A's company earning $14,000 per month, when RS did not work for Person A's company and did not earn the listed salary.

15. In or about January 2008, defendant CHERYL E. MORRISON signed her name on an affidavit as if to notarize the signature of RS in connection with his purchase of 222 Seaton Place NE, although she did not personally witness RS sign the affidavit.

16. In or about January 2008, defendant CHERYL E. MORRISON prepared a HUD-1 Settlement Statement falsely showing that RS brought $124,705.82 of his own funds as his cash contribution as required by the mortgage lender, Countrywide Bank, a financial institution with deposits insured by the Federal Deposit Insurance Corporation.

17. On or about January 11, 2008, a co-conspirator sent the settlement company via facsimile a copy of a cashier's check in the amount of $124,705.82, which was the exact amount of the required buyer's cash contribution, so the settlement file would appear to have the down payment money required by the mortgage lender.

18. On or about January 11, 2008, defendant CHERYL E. MORRISON prepared the disbursement statement correctly showing that the buyer RS did not contribute the required down payment, and then altering the remaining numbers to account for the missing funds.

19. In or about January 2008, in the District of Columbia and elsewhere, co-conspirators caused the signed deeds and deeds of trust to be submitted to the District of Columbia's Recorder of Deeds, with the instructions that after the recordation, the Recorder of Deeds should mail the stamped documents back to the settlement company.

### 5639 Southern Avenue, Capitol Heights, Maryland

20. On or about November 22, 2006, MAF purchased 5639 Southern Avenue, Capitol Heights, Maryland at the request of Person A. The loan application falsely stated that MAF worked for Person A's company earning $26,000 per month, when MAF did not work for Person A's company and did not earn the listed salary.

21. In or about November 2006, defendant CHERYL E. MORRISON signed her name on affidavits as if to notarize the signature of MAF on documents in connection with the purchase of 5639 Southern Avenue, Capitol Heights, Maryland, although defendant MORRISON did not personally witness MAF sign the affidavits.

22. In or about November 2006, defendant CHERYL E. MORRISON prepared a HUD-1 Settlement Statement falsely showing that MAF brought $22,422.72 of her own funds as her cash contribution as required by the mortgage lender, Resource Bank, a financial institution with deposits insured by the Federal Deposit Insurance Corporation.

### 426 60th Street, NE, Washington, D.C.

23. On or about February 3, 2006, in the District of Columbia and elsewhere, MAF refinanced the mortgage loan on 426 60th Street, NE, Washington, D.C., a property that had been previously purchased at the request of Person A. The refinance generated cash of approximately $37,000, which the mortgage lender understood would be given to MAF.

24. On or about February 3, 2006, defendant CHERYL E. MORRISON prepared a HUD-1 Settlement Statement falsely showing that the $37,000 would be paid to MAF; instead this money was sent to Person A.

25. In or about February 2006, defendant CHERYL E. MORRISON signed her name as if to notarize the signature of MAF, purportedly the owner, on the Deed of Trust and two affidavits, although defendant MORRISON did not personally witness MAF signing her name to these legal documents.

26. In or about February 2006, in the District of Columbia and elsewhere, co-conspirators caused the signed deeds and deeds of trust to be submitted to the District of Columbia's Recorder

of Deeds, with the instructions that after the recordation, the Recorder of Deeds should mail the stamped documents back to the settlement company.

### 1807 M Street, NE, Washington, D.C.

27. On or about July 31, 2009, in the District of Columbia and elsewhere, SW purchased 1807 M Street, NE, Washington, D.C. at the request of Person A.

28. In or about July 2009, defendant CHERYL E. MORRISON signed her name on a deed of trust as if she were notarizing the signature of SW in connection with the purchase of 1807 M Street NE, although she did not personally witness SW sign the deed of trust.

29. In or about July 2009, defendant CHERYL E. MORRISON prepared a HUD-1 Settlement Statement falsely showing that SW received assistance in the form of "gift funds" from a family member in the amount of $72,000 toward the purchase of 1807 M Street, NE, as represented to the mortgage lender, MetLife Bank, a financial institution, and FHA, which insured the loan.

30. On or about July 14, 2009, a co-conspirator sent the settlement company via facsimile a copy of a cashier's check in the amount of $72,000, which was the exact amount of the purported "gift funds," so the settlement file would appear to have the required by the mortgage lender and FHA.

31. In or about July 2009, in the District of Columbia and elsewhere, co-conspirators caused the signed deeds and deeds of trust to be submitted to the District of Columbia's Recorder

of Deeds, with the instructions that after the recordation, the Recorder of Deeds should mail the stamped documents back to the settlement company.

(Conspiracy to Commit Mail Fraud, in violation of Title 18,
United States Code, §§ 371 and 1341).

RONALD C. MACHEN JR.

United States Attorney
for the District of Columbia

By: _____
VIRGINIA CHEATHAM
Assistant United States Attorney
D.C. Bar # 411980
Virginia.cheatham@usdoj.gov
United States Attorney's Office
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7820